Thank you, Your Honor. Steve Hobachek, Federal Defenders, on behalf of Mr. Faulk. Your Honors, in Tora's floors, this Court set forth four criteria for District Courts to consider in deciding whether or not a B6 enhancement was applicable. The District Court found none of those four criteria here. Basically, this case stands for the notion that even though the conduct here is blameworthy and properly considered under 3553A, an ultimately opposing sentence, it does not meet the specific criteria set forth in B6. Now, if I can speculate, I think the District Court was going for the third one of the factors identified in Tora's floors, and that is that the method of transportation could cause the risk of injury even in the absence of accident. And what the District Court said was that a person in this very small and inhumane compartment could become uncomfortable, could have – could be claustrophobic, could become ill, and that sort of thing. Those simply don't rise to the level that's required under the Guideline. The Guideline says it has to be, number one, a substantial risk. The District Court didn't say anything about the substantial nature of the risk. Let me just go back a second. I thought Tora's floors – I thought you overstated Tora's floors just a little bit. Let me talk to you about that. I didn't think that it said that the possibility of accident, injury from accident, doesn't count. For example, if there's additional injury from accident because of the compartment, that would count, wouldn't it? No, I agree. I was just – So the fact that the person here was in a compartment that was up against the outside wall of the automobile in case the automobile got sideswiped or hit on the side or skidded out and hit a sharp object on the side, that person in the compartment would be far more likely to get hurt than somebody sitting in a passenger seat, right? I agree. But two things. Tora's floors was very careful to go with the actual findings made by the District Court here. The District Court didn't make any findings along the lines that Your Honor is suggesting, number one. And number two, as this Court pointed out in Tora's floors, that type of risk only comes up in the unlikely event of an accident. Here, there's no evidence of any sort of risk of accident above and beyond what was present in Tora's floors. In fact, it's much less. Excuse me, but as I read the examples to the guidelines and see if you agree, if the alien in this case had been in the trunk of the car, would the enhancement apply? I think so, under footnote eight in Tora's floors. So if it would, as a matter of law, why wouldn't it apply as a matter of law if she's sealed into a compartment in the side of the car? What lesser danger does she face from accident under the circumstances of this case than the illustration in the guidelines? That's a great point, Your Honor, but there are three criteria that this Court identified in Tora's floors in footnote eight. One of those was lack of ventilation, high heat, and high humidity. The District Court didn't make findings of any of those three things here. And, in fact, the compartment, it's bad, and it certainly should be taken into account in an imposing sentence, but it doesn't qualify here because there's no indication and no factual finding here that there's a problem with ventilation. In fact, there are two vents in the area where she was. The air conditioning was supposed to come through there. There's no findings on whether or not the air was coming from a central area in the front of the car and being routed through there and then out those vents or whether or not the air was being generated from there. But, again, focusing on the criterion of danger in the event of an accident, isn't her danger in the event of an accident greater than that of a person in the truck? McCall could be easily freed. As I understand the record in this case, the Border Patrol people actually had to perform a lot of mechanical work to get her out of this compartment. She had to be unscrewed. We don't dispute that she couldn't get out on her own. But the fact that, I mean, the factor of not being able to get out on your own doesn't, in and of itself, create a substantial risk of serious bodily injury, which, by the way, under the guidelines, is defined very significantly, or death. And the district court here never … Well, Torres Flores says that the mere risk they're going to be injured because you're on a vehicle doesn't count because … Right. But I don't think it says that if you are transported in a way, as Judge Horowitz points out, in the trunk, for example, where your risk of injury is much greater than if you're in the passenger's seat, if you get rear-ended and somebody's in the trunk, that person could easily get injured while all the passengers in the passenger compartments will be safe. Isn't the same true of your client's passenger here? I agree that you should take into account the increased risk under Torres Flores. Torres Flores pointed out the chances of an accident in that particular case, and that's the only time that that risk would become significant. In this case, it was only 0.03 percent. And the finding in Torres Flores was that that guy was going to drive 125 miles. The evidence here was that Mr. Falk said, and I think it's at page 103 or 104 of the X-ray record, that he was going to San Diego. So we're talking 16 miles rather than 120-something. So his risk of actually getting in an accident is even less. And who knows? He may have been dropping the person off in San Ysidro, which is right across the border. We don't know. But the bottom line is that you've got 0.03 percent for 120 miles here. The risk of there actually being an accident is even less because he's driving substantially less distance. So I agree that you should factor that in, but it doesn't get you there because we're still well below the 0.03 percent that this court found was inadequate in Torres Flores. And, again, the district court here never made the findings that Your Honor is talking about. You're seeking an agreement for fact-finding? Well, that would be an alternative. I think that the government had its bite at the apple, and the findings here are just grossly inadequate. When you're talking about claustrophobia or feeling uncomfortable, that doesn't get anywhere near the substantial risk of serious bodily injury that you need. Counsel, I thought there was testimony, though, from one of the agents who discovered her, that she was having trouble breathing and appeared to be suffering from heat stroke. There was that testimony at the trial. It was stricken because the individual didn't have any basis for opining as to that. So I don't think that's evidence that we can rely on, particularly under a clear ---- The objection was sustained on the ground that the agent wasn't a medical expert, but obviously a layperson could give an opinion about the condition of the woman when she was discovered, and the court could rely upon that at the sentencing, I assume, right? It never mentioned that. The government never mentioned that, and the district court never mentioned it at the hearing. And even, you know, basically all the guy said was that she seemed to be breathing with some difficulty, I think. So is your argument that the district judge failed to make specific findings, or is your argument that he couldn't have made those findings? Well, it's both. But, you know, if you don't agree with me on the fact that he couldn't have, then this record is certainly inadequate. Now, serious bodily injury involves the protracted impairment of a function of a bodily member, organ or mental faculty, or something that requires medical intervention such as surgery, hospitalization, or physical rehabilitation. I mean, saying someone might get claustrophobic or might not feel good just simply doesn't get anywhere near the level of injury that's required. Alternatively, it has to be a risk of death. So under no circumstances did the findings here get anywhere near what is necessary in order to sustain this particular enhancement. Your Honor, if you don't have any more questions, I'd like to reserve. Okay. Thank you, Your Honor. Thank you, Mr. Hobesek. Mr. Hoffman. Good morning, Mr. Hoffman of the United States. Where I would like to disagree with Mr. Hobesek is on the nature of the district court's findings here. It is true that the district court said the risk, in addition to certain things, was claustrophobia, illness, heat, et cetera, uncomfortableness, et cetera. But I would point to the in addition to. And what the district court was saying was, and I can give you the ‑‑ this is on page 344 of the excerpts of record. This is essentially the second paragraph of his findings. The risk in addition to the compartment as described and the placement of an adult human being there is claustrophobia, et cetera. Now, what the district court then had said previously, both in its tentative ruling and in its ultimate ruling, was you've got a four by one compartment. You've got jagged metal all around. And the testimony of trial was the jagged metal was very sharp all around. And she's locked in and can't get out on her own. So I would suggest those findings are sufficient and aren't simply claustrophobia, uncomfortableness, and so on. Now, it is true that the district court did not list the factors of torus florus and say I'm concentrating on number three or I'm concentrating on number four. I mean, there's no question he didn't do that. But I would suggest that the findings are not simply claustrophobia, et cetera. What was the tentative that you referenced? Was there some earlier? Yes. At excerpt of record 336, the court tentatively imposed the plus six, the 12 to 18 sentencing bump, and then said the court said I'm relying on the government's response where it described the nature of the compartment, of the non-factory compartment. Then you go to the government's response. It's the being trapped and locked. It's the cramped space. And it's the jagged metal edges. So I'd suggest there are more findings going on there. Well, I see the tentative, and then the judge goes ahead and makes his ruling. So the tentative in 336, and then in 344 there is the ruling. And I thought tentatives are tentative. That's true. That's what I'm thinking of doing. You then the judge then hears the presentations or evidence, whatever is going to happen at the hearing, and then makes a final ruling. And my unless the judge says I stick by my tentative and let me make additional rulings, I had always assumed that the tentative stays tentative and is superseded by the. That's fine, Your Honor. But I'd suggest that the final ruling is basically reincorporates the. Well, I understand. That goes back to your argument one. But you made your argument one. You then went on to argument two. And argument two says there are more findings in the tentative. So that's what we're talking about now. Now, if you want to give up on that and go back to argument one, that's fine. But if you want to keep pressing argument two, you'll have to answer my question. So. It's true, Your Honor, that sometimes courts entirely change their reasoning between tentative rulings and final rulings. But oftentimes they add additional reasons to what were their tentative reasons. And here, I don't see any reason to think that the court totally disregarded its tentative ruling. But we don't even have to. It's a little hard to figure out, particularly when the tentative doesn't set out reasons but incorporates the government's position. So I think it would be a little hard to. That's fine, Your Honor. I would stand on that. It was worth a try. All right. So let me ask you the question I asked your opponent. Does the district judge have to make specific factual findings, or is it only – is it sufficient that the district judge makes the ultimate finding and it's supported by the record? Well, I would urge the latter. But I would say under the circumstances of the case, we have the former because of the paragraph that I've pointed to. Now, I don't believe, and I don't think counsel cited any cases which say, no, you have to line up the four factors of torus floris and specifically say it's factor three and these are the facts I rely on. So I would say – But I think the question is a more generic one than just dealing with this particular enhancement. This is something that's going to cost the defendant months or years of his life in prison. And I think, as I understand Judge Horowitz's question, is can a judge simply say, I find the enhancement, or do we need – where there are questions of factors in this case, do we need specific findings? To put it differently, what if the judge had just said, I looked at the record in this case and it supports this enhancement. Would that be sufficient? The usual rule in cases is that you can affirm on any basis apparent from the record. So I could say, yes, it would be sufficient. But I would also urge, no, in this case, you don't have that bare bones kind of finding. You actually have some factual findings in the paragraph that I pointed to, in addition to the claustrophobia and uncomfortableness finding. So my answer directly to Your Honor is the usual rule, you can affirm on any basis apparent from the record, but that's not what we have here. But that rule – I understand that we don't have that here, Park, but just focusing on the first part of your answer, it's not just a question of can this be affirmed on the record. So the real question is, do we at that point presume that this judge could have made all the findings that could be supported by the record? We look at the record and say a judge could make this finding, could make this finding, could make this finding, or does the judge actually have to come out and make some findings? And I think I tend to agree with you that what the judge did here is probably enough. But the generic question is really an interesting one. I agree, and in a way I'm happy that I don't have to answer that to urge a resolution of this case. Government is never interested in interesting issues, right? Like an easier firm, right? Okay. Thank you very much. Your Honor, I don't know if the Court has any questions on any of the other issues. I think we're in the same position. Great. Thank you. Mr. Habashek. Thank you, Your Honors. Mr. Hoppe's argument turns on asking this Court to sort of make up what the government – what the district court was thinking when it said in addition to the compartment as being described in placement of an adult woman being in such a compartment. I mean, there's no there there. I mean, the district court never said that there's an extra risk of injury based upon the way that the vehicle was being operated. It never said that there was a sufficient substantial risk of the various. The district judge does talk about jagged edges, right? That's a finding. Right. And we don't dispute that fact. There are apparently sharp edges. Okay. So that is a finding. Why couldn't we read that as saying the passenger was positioned in such a way that the jagged edges posed a special risk of injury from those jagged edges? Well, if that were the case, I would think that there would need to be some sort of explanation about the fact that this woman apparently had no injuries whatsoever, number one. Well, but risks are like that. You know, if you close your eyes and cross the street and you make it to the other side, it doesn't mean it wasn't dangerous to close your eyes and cross the street. I understand that. But I think if you're going to find that there's a substantial risk of that type of injury, number one, I think there would at least have to be some explanation as to why there's no evidence whatsoever. Well, it's not hard to imagine how somebody can get injured if they're thrown against jagged edges, either because of an accident or because of a sudden stop or because of an unexpected swerve or something of that sort. But the district court never found any sort of substantial risks of any of those types of behaviors either. But the other point is, is that the guidelines specifically say serious bodily injury. And that, again, goes back to the definition that I read, which, by the way, comes from Section 1B1.1 of the Guidelines Comment 1L that talks about the very serious nature. It's not just that she might get a scratch from the side of this thing. It has to be something that requires surgical intervention or physical rehabilitation or hospitalization or is going to impair a bodily function or member in a protracted way. There's nothing even approaching that type of finding here. I mean, the district court just basically identified what is a bad compartment, which should have been taken into account under 3553A. This judge also found that the person was not in a position to help themselves without others extracting them and tending to them. I mean, the judge speaks in terms of them, but he means her, right? Right, right. And that's true. They had to unscrew it in order to get her out. But the fact that you can't get out doesn't in and of itself create danger. And we put kids in car seats that they can't get out of so that they'll be safe. So the fact that, you know, that you can't get out doesn't in and of itself demonstrate danger, let alone the extreme level of danger that this enhancement requires. And, again, the district court just simply never found that level of risk here. It never even addressed it. Okay. Thank you very much. Thank you, Your Honor. The case is argued for and submitted.
judges: Kozinski, Watford, Hurwitz